# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ANDERSEN WINDOWS, INC., | Case No. 19-CV-679 (NEB/LIB) |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |
| MARK BARBARO, | |
| Defendant. | |

Andersen Windows, Inc. and Mark Barbaro, its former employee, entered into an employment agreement that is subject to arbitration. Under the non-competition and nondisclosure provisions of the contract, Andersen now seeks to stop Barbaro from his new employment at Lowe's, and brings this motion for a pre-arbitration injunction. An injunction pending arbitration is appropriate only if the agreement contains "qualifying contractual language" allowing the Court to grant the relief without considering the merits of the dispute. Because the Court determines the contract at issue does not contain the necessary qualifying language and because the Court would necessarily delve into the merits of the dispute to grant the relief Andersen seeks, the Court will deny the motion.

## BACKGROUND

Andersen is a product sales and service organization with its principal place of business in Minnesota. [ECF No. 8 ("Mog Decl.") at ¶ 6.] Until recently, Barbaro was an executive business manager at Andersen. (*Id.*, ¶ 10.) Barbaro began selling windows and doors to Home Depot while in college, on behalf of a business acquired by Ply Gem, a North Carolina–based building product supplier. [ECF No. 14 ("Barbaro Decl.") at ¶ 2.] In 1995, Barbaro began working for Silver Line Building Products, continuing to sell windows and doors to Home Depot. (*Id.*, ¶ 3.) In 2006, after Andersen acquired Silver Line, Barbaro worked for Andersen in the Silver Line division, still selling windows and doors to Home Depot. (*Id.*, ¶¶ 4–5.)

In 2011, Home Depot asked Andersen if Barbaro could be its primary contact and Barbaro was promoted to Director of Business Development for Andersen's Home Depot business. (*Id.*, ¶ 6; Mog Decl., ¶ 10, Ex. B.) Barbaro approximates that he spent eighty percent of his working time on matters related to vinyl windows and doors manufactured by Silver Line and twenty percent of his time on matters related to Andersen wood windows and doors. (Barbaro Decl., ¶ 7.)

In June 2018, Barbaro's supervisor informed him that the Silver Line division of Andersen was to be sold, and asked for Barbaro's assistance. (*Id.*, ¶ 9.) Barbaro's supervisor asked him to keep the information confidential, including from Barbaro's wife, who worked in the Silver Line division. (*Id.*) Barbaro asserts that he did so. (*Id.*,

¶ 10.) In August 2018, Andersen announced the sale of its Silver Line division to Ply Gem, where Barbaro had worked after college. Barbaro's wife moved to Ply Gem, and Barbaro hoped to move as well. (*Id.*, ¶¶ 12–13.) Andersen instead asked him to stay, though Barbaro was concerned that his responsibilities would be diminished given that most of his job related to Silver Line, the division that had just been sold. (*Id.*, ¶¶ 13–14.) Barbaro stayed at Andersen, and in December 2018, his supervisor asked him to sign an Employment Agreement, which included a pay increase.

In addition to the pay increase, the agreement includes covenants to protect confidential information and covenants not to compete. (Mog Decl., Ex. C. ("Agreement"), ¶¶ 2-3.) In the non-compete, Barbaro agreed that during his employment and for a two year "restricted period" after termination of employment, he would not:

    a.    Work for or support a competing business or a covered customer or vendor;

    b.    Sell any competing product or service;

    c.    Induce or encourage a covered customer or vendor to reduce, cancel, or discontinue its business with [Andersen], or in any other manner modify or change its existing or potential business relationship with the [Andersen]; or

    d.    Recruit company personnel.

(Agreement, ¶ 3.)

As for the nondisclosure portion of the Agreement, Andersen asserts that Barbaro was provided access to Andersen's confidential and proprietary product performance information, features, and designs, and both Andersen's and Home Depot's specific confidential and proprietary information regarding business development, marketing,

promotional, sales, pricing, and distribution strategies and information, including

Andersen's discount and sales profit margin structure. (Mog Decl., ¶ 14.) Through his

business development responsibilities, Barbaro became familiar with Andersen's

products, marketing strategies, pricing structure, discount strategies, service

commitment, relationships, key customer contacts, and opportunities. (*Id.*, ¶ 15.) The

nondisclosure paragraph states that Barbaro "will never, during or after [his]

employment, use or disclose Confidential Information, unless authorized by the

Company in writing or compelled by law (such as by a court order or valid subpoena)."

(Agreement, ¶ 2.)

The Agreement also includes an arbitration provision, under which the parties

agree that claims between them (unless excepted by the Agreement) "will be decided

only by an arbitrator through arbitration and not by a judge or jury." (Agreement, ¶ 5(a).)

The parties agree that the claims here fall within the arbitration clause, and Andersen has

filed a demand for arbitration.

Most relevant to this motion, however, are Paragraphs 5(d) and 5(e) of the

Agreement, which states as follows:

> (d) In the event that I fail to comply fully with any of the terms, provisions
> or conditions of this Employment Agreement, including [the non–compete
> provision], [Andersen] shall be entitled to equitable relief against me by
> way of injunction with or without first filing an arbitration. During any
> lawsuit to obtain equitable relief and/or during any arbitration, [Andersen]
> and I shall continue to perform our respective obligations under this
> Employment Agreement in full, including my obligations under [the non–

compete provision]. I consent to a Minnesota court's personal jurisdiction and waive any objections regarding a Minnesota court's jurisdiction.

(e) In any proceeding by [Andersen] for equitable relief, I specifically waive any requirement that [Andersen] prove that any threatened or actual breach, violation or failure to comply fully with the terms, provisions or conditions of this Employment Agreement will cause irreparable injury. I agree that [Andersen] has no adequate remedy at law for a threatened or actual breach of [the non–compete provision]. I agree not to raise as a defense in any such proceeding any allegation that any of the provisions of [the non–compete] are unnecessary, unreasonable or unenforceable; that any of them illegally restrain trade or competition; that any of them violate any of my rights; or that I did not receive adequate consideration for this Employment Agreement…. [Andersen] and I expressly intend … that a court will issue an injunction enforcing [the non–compete provision] without addressing the merits of any arbitrable dispute. The parties intend to have equitable relief in place until an arbitrator determines the merits of any dispute and determines what relief, if any, is appropriate.

(Agreement, ¶ 5(d)–(e).)

Several months after the Silver Line transaction and after signing the Agreement, Barbaro felt he had a diminished role and reduced responsibilities, and therefore he believed he did not have a future at Andersen. (Barbaro Decl., ¶ 22.) On March 7, 2019, Barbaro provided Andersen a two week notice of his resignation, and told his supervisor that he accepted employment with Lowe's Companies, Inc. (Mog Decl., ¶¶ 17-18.) Because Andersen believes Lowe's is one of its largest competitors, Andersen immediately terminated Barbaro's access to its business information and curtailed his work, but planned to make his resignation effective on and pay him through the resignation date Barbaro provided in his notice. (*Id.*, ¶¶ 18, 20.) Barbaro disagrees that

Lowe's is a competitor of Andersen and has since started working for Lowe's as a window and door merchant. (Barbaro Decl., ¶¶ 23–25, 27–28.)

Andersen twice informed Barbaro that it believed his employment with Lowe's would violate his obligations under the Agreement, and demanded Barbaro withdraw his application at Lowe's or resign from any competitive position he accepted. (Mog Decl., ¶¶ 19, 21.) Barbaro disagrees that his new role at Lowe's violates any obligations under the Agreement. (Barbaro Decl., ¶¶ 23–25, 27.)

## ANALYSIS

Andersen asks the Court to enjoin[1] Barbaro under Fed. R. Civ. P. 65(a) from working for Lowe's, or any other competing business, selling any competing products or services, using any confidential information of Andersen, and encouraging any Andersen customer to reduce or discontinue its business with Andersen, pending the outcome of arbitration. [ECF No. 5 ¶¶ a–d.]

Ordinarily, a preliminary injunction motion requires evaluation of: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). But Eighth Circuit law provides that "[i]n

---

[1] Andersen provided Barbaro with notice of its motion, and thus the Court will treat its motion for a temporary restraining order or preliminary injunction as a motion for a preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure.

a case involving the Federal Arbitration Act (FAA), courts should not grant injunctive

relief unless there is 'qualifying contractual language' which permits it." *Manion v. Nagin*,

255 F.3d 535, 538-39 (8th Cir. 2001). "Qualifying contractual language is 'language which

provides the court with clear grounds to grant relief without addressing the merits of the

underlying arbitrable dispute.'" *Id.* at 539 (quoting *Peabody Coalsales Co. v. Tampa Elec. Co.*,

36 F.3d 46, 47 n.3 (8th Cir.1994)); *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Hovey*,

726 F.2d 1286, 1292 (8th Cir. 1984) ("The parties have not alleged that the contract

provides for or contemplates injunctive relief along the lines granted. Accordingly, the

Act directs the court to stay the judicial action.")

Thus, under *Peabody*, *Manion*, and *Hovey*, courts in this District have declined a

preliminary injunction in employment agreement cases where the agreement at issue did

not provide the court with "clear grounds to grant the requested relief without

addressing the merits of the underlying arbitrable dispute." *Andersen Windows, Inc. v.

Garfield*, No. 17-cv-826 (JNE/KMM), 2017 WL 1273989, at *2 (D. Minn. April 5, 2017); *see

also, e.g., Signus Medical, LLC v. Ilion Medical, LLC*, No. 12-2916 (DWF/TNL), 2012 WL

12884406 (D. Minn. Dec. 10, 2012). In one case in this District, the court granted a

preliminary injunction where it found the necessary qualifying contractual language and

determined it did not have to embroil itself in the merits of the case. *See RSM McGladrey,

Inc. v. Epp,* No. CIV. 11-612 (ADM SER), 2011 WL 1667957, at *4 (D. Minn. May 3, 2011).

In *RSM McGladrey*, the defendants allegedly violated covenants restricting the solicitation

and servicing of certain plaintiff clients. *Id.* at *1. The court found "qualifying contractual language," in part where the employment agreements provided: claims for alleged violations of the non–solicitation covenants may be brought immediately in court, without having to first file a mediation or arbitration, for the purpose of obtaining preliminary injunctive relief pending the outcome of the dispute resolution procedures. *Id.* at *3. The *RSM McGladrey* parties had agreed that the plaintiff "shall be entitled to seek equitable relief against [defendants] by way of injunction without having to first file a mediation or arbitration." *Id.* The court further found that the parties "evinced an intent to have an injunction issue without addressing the merits of the dispute" by waiving arguments relating to irreparable injury and with respect to enforceability of the contract. *Id*.

The Agreement in this case is similar to the agreements in *RSM McGladrey*. (*See* Agreement, ¶ 5(e).) For example, the Agreement here provides that Andersen "shall be entitled to equitable relief against [Barbaro] by way of injunction with or without first filing an arbitration" and that the parties intend "that a court will issue an injunction enforcing [the non–compete provision] without addressing the merits of any arbitrable dispute." (*Id.* at ¶ 5(d)–(e).) However, Barbaro's Agreement with Andersen and the facts of this case are distinguishable from *RSM McGladrey* in important (and dispositive) respects.

8

First, the court in *RSM McGladrey* did not have to decide whether there was a breach of the agreements—the breach in that case was not in dispute. In addition, the agreements in *RSM McGladrey* provided that injunctive relief was available for any "alleged violations." 2011 WL 1667957, at *3. Here, the Agreement entitles Andersen to injunctive relief only if Barbaro *actually* (as opposed to allegedly) "fail[s] to comply fully with any of the terms, provisions or conditions of this Employment Agreement…" (Agreement, ¶ 5(d).) Thus, under the plain reading of the Agreement, this Court would have to find Barbaro failed to comply with the agreement, *i.e.* find a breach, before it could grant an injunction – an issue the parties vociferously dispute. While Andersen argues Barbaro is in breach of the Agreement, Barbaro disputes that Lowe's is a competitor and asserts that his employment at Lowe's will not require him to divulge confidential information. (*See* Barbaro Decl., ¶¶ 23–25, 27–28.) Because Barbaro disagrees that his employment at Lowe's violates the non–compete and nondisclosure provisions, he believes he is continuing performance of all relevant obligations under the Agreement, as required by the Agreement. (*See* Agreement, ¶ 5(d)) ("During any lawsuit to obtain equitable relief and/or during any arbitration, the Company and I shall continue to perform our respective obligations under this Employment Agreement in full . . . .")

While the Agreement "intend[s] … that a court will issue an injunction … without addressing the merits of any arbitrable dispute," this statement of intention cannot supersede the Agreement's language allowing injunctive relief "in the event that

[Barbaro] fail[s] to comply fully with" the Agreement. (*Compare* Agreement at ¶ 5(d) with ¶ 5(e).) The Agreement may intend that the Court grant an injunction without reaching the merits, but its intention has not been translated to the mandates of the Agreement, which allows an injunction only if Barbaro "fail[s] to comply" with the Agreement's terms. And the Court clearly cannot make that determination without wading (or diving) into the merits of the dispute. *See Manion v. Nagin*, 255 F.3d at 539 ("Another provision in the Agreement states that a party is entitled to injunctive relief 'in case of any breach,' but in order to issue such relief the district court would have been required to determine that a breach had occurred and to have made a determination on the merits of the underlying dispute, an issue for the arbitrator.") Because the Court would have to reach the merits of the arbitrable dispute, the Agreement does not contain sufficient "qualifying contractual language" to allow the Court to grant a preliminary injunction.

The Court therefore concludes that a preliminary injunction should not be issued, and the motion is denied. The case, brought solely for injunctive relief, is therefore dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 28, 2019                          BY THE COURT:

                                               s/Nancy E. Brasel
                                               Nancy E. Brasel
                                               United States District Judge